Max & Lilli CLAUSEN, dba Clausen Oysters, Plaintiffs,

v.

M/V NEW CARISSA, in rem, Taiheiyo Kaiun Co., Ltd., Green Atlas Shipping, S.A., TMM Co., Ltd., Benjamin Morgado, The Britannia Steam Ship Insurance Association Limited, William Milwee, Gallagher Marine Systems, Inc., and Does 1 through 50, Defendants.

No. Civ. 00–6078–TC.

United States District Court, D. Oregon.

Oct. 15, 2001.

Everett W. Jack, Eric L. Dahlin, Davis Wright Tremaine, Portland, OR, David C. Tarshes, Davis Wright Tremaine, Seattle, WA, James P. Walsh, David Wright Tremaine LLP, San Francisco, CA, for Plaintiffs.

Robert I. Sanders, Todd A. Zilbert, Wood Tatum Sanders & Murphy, Portland, OR, Dean D. DeChaine, Miller Nash Wiener Hager & Carlsen, Portland, OR, Janet Lee Hoffman, Law Offices of Janet Lee Hoffman, Portland, OR, for Defendants.

## ORDER

COFFIN, United States Magistrate Judge.

Presently before the court is plaintiffs' Motion—to Alter/Amend/Correct Judgment (# 218). More accurately described, plaintiffs' motion seeks to add attorneys' fees and litigation expenses to the judgment against defendants, under the "damages" provision of the Oregon Oil Spillage Act.[1]

### BACKGROUND

Plaintiffs were among the many individuals and businesses affected by the grounding of the M/V New Carissa oil tanker in February 1999. On March 20, 2000, plaintiffs filed suit in this court against numerous defendants, including, *inter alia* the company owning the oil carried by the New Carissa (Taiheiyo Kaiun Co.), the New Carissa's insurance carrier (Britannia Steam Ship Insurance Association), the captain of the ship at the time of the grounding (Benjamin Morgado) and the ship itself, *in rem*. Plaintiffs asserted a variety of federal and state claims in their original complaint, including claims under the federal Oil Pollution Act ("OPA") and the state Oil Spillage Act

---

1. Plaintiffs also move to correct a clerical error resulting in the judgment against defendants Taiheiyo Kaiun Co., Green Atlas Shipping, S.A., and TMM Co. being listed as only a judgment against defendant Taiheiyo Kaiun Co. This portion of plaintiffs' motion is granted pursuant to Fed.R.Civ.Pro. 60(a).

("OSA"). Eventually, the claims and parties were winnowed down, and when they finally got to the jury, plaintiffs presented their case against defendant Taiheiyo Kaiun under the OSA and OPA. After a five-day trial, the jury found for plaintiffs and awarded them $1,425,486.00.

Plaintiffs now seek to amend the judgment of the jury to reflect attorney fees, other litigation expenses and prejudgment interest as well as the jury's damage award.

## DISCUSSION

A central dispute at this stage of the litigation has been the intention of the Oregon legislature in composing Oregon Revised Statute ("ORS") 468B.300(6), defining "damages" for purposes of the OSA. That section reads:

> "Damages" includes damages, costs, losses, penalties or attorney fees of any kind for which liability may exist under the laws of this state resulting from, arising out of or related to the discharge or threatened discharge of oil.

In essence, plaintiffs argue that this clause allows all fees and costs resulting from a party's spillage of oil to be recovered as damages in an action against that party, while defendants argue that, as in the traditional fees-as-damages context, the clause only provides for fees if they were incurred in a previous action.[2]

This is not the first time this court has been asked to examine ORS 460B.300(6) in this case. As noted by plaintiffs, the court has previously ruled that "this statute must be read to include attorney fees expended in the successful pursuit of remedies under the Oregon Oil Spillage Act." *Order of 2/14/2001*, p. 21. Defendants' reiteration of their earlier arguments have provided nothing new to cause the court to change its ruling. The issue, as the court sees it, is no longer *if* fees can be recovered under the statute but *what* fees are recoverable.[3]

 The court disagrees with plaintiffs that any and all fees and costs are automatically recoverable once a party's under-

---

**2.** Defendants have labored earnestly to fashion a construct of the damages clause that is as narrow as the lawyerly mind can imagine: in our initial visit of the provision, we were informed that the legislature had in mind the awarding of fees to plaintiffs with less than $5,500 in property damages from an oil spill. *See Order of 2/14/01* (the relevant portion of which is attached as Appendix 1), p. 20. Defendants now argue that attorney fees are only recoverable if they constitute damages in the traditional sense (*e.g.*, fees incurred as a result of the false prosecution of a claim would be damages in a subsequent malicious prosecution action). Again, the defendants' interpretation renders the inclusion of fees as recoverable damages a superfluous nullity. It seems clear to this court that the legislature, far from intending to protect oil spillers from exposure to fees, intended rather to make any party damaged by a spill as whole as possible.

**3.** The definition of "damages" provided by the Oregon legislature is the broadest possible, as indicated not only by the use of the

phrase "of any kind" but also by the litany of the types of damages that can be recovered: "damages", "costs", "losses", "penalties" or "attorney fees". The inclusion of "damages" in the definition of "damages" necessarily implies that the other items are not "damages" as traditionally defined. Costs, losses, penalties and fees can be expended in numerous ways: responding to an oil spill, hiring workers for clean up, and, of course, in litigating liability. Defendants' contention that the phrase "for which liability may exist under the laws of this state" *limits* recovery of such damages to those incurred in a prior action is thus not well taken. Rather, that phrase would seem to refer to the fact that those expenditures can only be charged to the purported polluter upon a finding of liability under the Oregon Oil Spillage Act or other Oregon statute. Once liability has been found, the polluter is responsible for damages and fees "of any kind", including fees incurred in a prior action, but hardly limited to only such fees.

lying liability for spillage is determined. It is inconceivable that the legislature would write a statute that would allow a plaintiff, reasonably confident of a defendant's liability, to write a "blank check" and run up a legal tab that would automatically be picked up by the defendant regardless of the reasonableness of the fees. Rather, the "damages" definition in ORS 468B.300(6) is most appropriately viewed as including an extensive fee-shifting award that allows a prevailing plaintiff to recover attorney fees and litigation costs according to traditional principles of reasonableness, codified in Oregon at ORS 20.075.

ORS 20.075 provides, in relevant part:

(1) A court shall consider the following factors in determining whether to award attorney fees in any case in which attorney fees are authorized by statute and in which the court has discretion to decide to award attorney fees:

(a) The conduct of the parties in transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

(b) The objective reasonableness of the claims and defenses asserted by the parties.

(c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

(d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

(e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceeding.

(f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the case.

(g) The amount the court has awarded as a prevailing party fee under ORS 20.190.

(h) Such other factors as the court may consider appropriate under the circumstances of the case.

(2) A court shall consider the factors specified in subsection (1) of this section in determining the amount of an award of attorney fees in any case in which attorney fees are authorized by statute and in which the court has discretion to decide whether to award attorney fees. In addition, the court shall consider the following factors in determining the amount of an award of attorney fees in those cases:

(a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

(b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

(c) The fee customarily charged in the locality for similar services.

(d) The amount involved in the controversy and the results obtained.

(e) The time limitations imposed by the client or the circumstances of the case.

(f) The nature and length of the attorney's professional relationship with the client.

(g) The experience, reputation and ability of the attorney performing the services.

(h) Whether the fee of the attorney is fixed or contingent.

. . . . .

(4) Nothing in this section authorizes the award of an attorney fee in excess of a reasonable attorney fee.

■ Further, Oregon caselaw clearly instructs that attorney fees are recoverable only for those fees reasonably incurred in the pursuit of (1) successful claims (2) for which fee recovery is authorized. *See, e.g., Skaggs v. Hendgen,* 127 Or.App. 659, 664, 874 P.2d 93 (Or.App.1994). The Oregon Court of Appeals has noted that:

> Statutes that authorize an award of attorney fees to a party who succeeds or prevails in a proceeding authorize an award for the fees reasonably incurred to achieve the success that the party actually achieved. If the party asserts several claims that are subject to an award of fees but prevails on only one of them, fees can be awarded only for the time reasonably necessary to prevail on the sole claim on which the party prevailed. That does not necessarily mean that time devoted to the other claims may not be recoverable. If, for example, there are common issues among the claims, it may not be necessary to apportion the fees between the claim on which the party succeeded and those on which the party did not. In that circumstance, the court might conclude that it would have taken roughly the same amount of time to litigate a case in which the successful claim was the sole claim as it took to litigate the case in

which it was one among several claims, so it would not be necessary to apportion the fees to reflect the lack of success on the other claims.

*Freeland v. Trebes,* 162 Or.App. 374, 378–79, 986 P.2d 630 (Or.App.1999) (citation omitted).

These considerations, required by the Oregon legislature and Oregon judicial precedent, guide this court in evaluating plaintiffs' request for fees, and the court has taken the requisite considerations under advisement. Plaintiffs have provided a detailed itemization of their fees and costs, and the court has examined it.[4] Based on the considerations mandated by Oregon statute, the court's examination of plaintiffs' itemization, and defendants' objections to plaintiffs' itemization, the court finds as follows.

■ As a threshold matter, the court finds that of all the claims brought by plaintiffs throughout the litigation, only the OSA claim enabled plaintiffs to seek attorney fees. Hence, under the rationale articulated in *Freedland,* the only fees recoverable by plaintiffs are those directly related to pursuing the OSA claim or those fees incurred in pursuit of a separate claim tied to the OSA claim by "common issues" of fact or law.

■ The bulk of defendants' objections relate to the question of which fees were appropriately spend litigating the OSA claim. In essence, defendants believe that plaintiffs can only recover fees incurred in pursuance of two issues—causation and damages—under the OSA claim against defendant Taiheiyo Kaiun Co.[5] However,

---

**4.** Plaintiffs have also filed a supplemental itemization, making their documentation of fees current to August 31, 2001.

**5.** Defendants eventually stipulated that Taiheiyo Kaiun Co. owned the oil. As such, they assert that the OSA requires only proof of causation and damages because it rests liability on "[a]ny person owning oil *or* having control over oil which enters the waters of the state ..." (emphasis supplied). Hence, they claim, plaintiffs needed to pursue no one other than Taiheiyo Kaiun Co., and did not need to examine anything other than causation and damages.

defendants' allegation that the scope of the litigation was necessarily so limited overlooks several factors. In particular, it overlooks the potential liability limitation provided by the federal Oil Pollution Act, which could have placed a cap on the recovery afforded plaintiffs upon a successful verdict. To overcome this limitation, plaintiffs would have had to demonstrate gross negligence; hence, it was necessary (until defendants stated their intention to waive that potential defense) for plaintiffs to develop evidence that defendants were grossly negligent, even if pursuing only an OSA claim. Pursuit of a gross negligence theory up until February 9, 2001 (at which time it became clear that defendants would waive the defense) was therefore not unreasonable for purposes of the OSA claim, and plaintiffs can recover reasonable fees for that effort. Because the same research and general effort went into both preparing to defeat a limited liability defense by showing gross negligence and preparing general maritime claims, and because the applicable punitive damages standard is essentially identical to that of gross negligence, reasonable fees incurred in pursuit of plaintiffs' general maritime claims and punitive damages are recoverable. *See, e.g., Freedland v. Trebes, supra.*

■ Similarly, defendants' contention that fees expended in pursuit of any defendant other than Taiheiyo Kaiun are per se unrecoverable is inaccurate. Until defendants stipulated to ownership of the oil, plaintiffs had to name and pursue anyone who might have had ownership or control of the oil to satisfy that threshold question of the OSA. Thus, even pursuit of what turned out to be non-OSA defendants was, at the time, a reasonable OSA expense.

Defendants are correct in pointing out that the *in rem* claim against the M/V New Carissa was unnecessary for purposes of an OSA claim. However, the time spent related to the *in rem* claim was,

again, tied together with claims appropriate under the OSA such that the court cannot parse out specific areas in which the *in rem* claim added significant time or effort to plaintiffs' fees. As such, although unnecessary, the *in rem* claim against the M/V New Carissa did not result in plaintiffs incurring fees which they are barred from recovering from defendants under the OSA.

■ Defendants next contend that the hourly billing rate for Mr. Walsh—$325.00/hour to $345.00/hour—was excessive and unreasonable. Plaintiffs and defendants have submitted evidence of what each side believes a "reasonable fee" for Mr. Walsh's work to be, including affidavits from other local attorneys. The court notes that Mr. Walsh's fee is within the range—albeit near the top of the range—of fees charged by Oregon attorneys as documented by the Oregon State Bar in its 1998 Oregon Economic Survey. Although this survey is not dispositive on the question of reasonableness, when combined with Mr. Walsh's experience as an attorney—particularly in this area of litigation—the court is persuaded that his hourly rate is not unreasonably excessive.

■ Defendants also question the availability of expert witness fees under the damages clause of the OSA. Specifically, defendants note that in other fee-shifting statutes, expert witness fees are specifically noted as recoverable; thus, in those statutes without an expert witness fee provision, courts have found that expert witness fees are not recoverable. *See, e.g., West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991). However, as noted above, the OSA damages clause is broad, covering "damages, costs, losses, penalties or attorney fees *of any kind*" (emphasis supplied). The sheer breadth of this provision suggests legislative intent to cover

litigation expenses including expert witness fees. The legislature did not authorize merely the shifting of attorney fees to the losing party, as in *Casey;* rather, its intent was clearly to allow a prevailing plaintiff to be made whole. This is the only rational explanation behind including fees, costs, losses, etc. as *damages.* When expert witness fees are reasonable in pursuing a claim under the OSA, the act would appear to include them as recoverable damages. As plaintiffs' expert witness fees were reasonable to proving their OSA claim, their expert witness fees are recoverable.

Next, the parties dispute the appropriate amount of prejudgment interest due the plaintiffs.[6] Both sides stipulated that this would be an issue for the court following a jury verdict for plaintiffs, and have submitted calculations representing what each side believes to be an appropriate valuation. The court finds defendants' current[7] calculation to be the most informed and accurate. Plaintiffs are due $32,160.59 in prejudgment interest.

■ It should be noted that plaintiffs' agreement with their attorneys was a contingency agreement, whereby plaintiffs assumed responsibility for all costs and expenses, but would only pay attorney fees upon a successful outcome. However, upon such an outcome, plaintiffs further agreed to pay their attorneys a bonus of $75,000 (for a pre-trial settlement) or $150,000 (once trial had commenced). Although the court recognizes that reasonable contingency fee arrangements are acceptable in fee-shifting settings, under the circumstances presented here the "bonus"

exceeds the limits of reasonableness. The court agrees with plaintiffs' attorneys that they took a risk in accepting the case on contingency, and that such risk is one of the factors to consider under ORS 20.075(2); however, ORS 20.075(4) reminds us that "Nothing in this section authorizes the award of an attorney fee in excess of a reasonable attorney fee." Plaintiffs successfully retained and utilized a team of highly qualified—and rather expensive—attorneys, for which defendants will be footing the bill. Seeking a bonus of $150,000 on top of the fees legitimately incurred in pursuit of the OSA claim tips the scales in favor of unreasonableness. This is the "blank check" approach which I have rejected. The bonus is unrecoverable from the defendants.

■ Finally, defendants object to various expenses which are not itemized by plaintiffs with sufficient particularity or which were spent in clearly non-OSA activities such as media conferences. These fees, listed by defendants as "Other/Unknown" expenses, totaled $10,876.32. Such expenses were neither necessary nor useful to plaintiffs' OSA claim. They are unrecoverable and are subtracted from plaintiffs' itemization.

### CONCLUSION

Plaintiffs' reasonable costs, fees, and general expenses related to their OSA claim are recoverable under that act. The fees and expenses incurred by plaintiffs' attorneys and expert witnesses are reasonable and, with minor exceptions, were required in pursuit of plaintiffs' OSA claim.

---

**6.** Prejudgment interest is authorized by the OPA. 33 U.S.C. § 2705.

**7.** Defendants' expert calculated a figure prior to trial based on an estimated recovery value. This earlier figure, although based on a lower recovery estimate, was higher than defendants' current computation. Although this

discrepancy is not explained, defendants current computation is the only figure provided to the court that has as its basis the actual recovery awarded to plaintiffs. The court sees no error in the method or accuracy in defendants' current computation, and accepts it as valid.

Plaintiffs are entitled to attorney fees of $651,382.30; expenses of $149,170.05;[8] and prejudgment interest of $32,160.59. The judgment will be modified to add a total of $832,712.94, reflecting costs and expenses up to August 31, 2001. The judgment will also be modified to add as liable defendants Green Atlas Shipping, S.A. and TMM Co., Ltd.

## APPENDIX 1

### Excerpt from Order of February 14, 2001

#### (2) Attorney Fees as Damages

Under the Oregon Oil Spillage Act, damages are defined as "damages, costs, losses, penalties or attorney fees of any kind for which liability may exist under the laws of this state resulting from, arising out of or related to the discharge or threatened discharge of oil." ORS 468B.300(6).

Morgado relies on the phrase "for which liability may exist under the law of this state" to support his argument that no attorney fees are available under the Oregon Oil Spillage Act unless there is some separate authorization for those attorney fees under the laws of Oregon apart from ORS 468B.300(6) and 468B.310(1).

Plaintiffs argue that the definition of damages under this statute clearly includes "attorney fees *of any kind*" (emphasis added) and those fees were intended to be included within the phrase "for the damages to persons or property, public or private, caused by [the oil spill]." ORS 468B.310(1).

If the court were to adopt defendant's reading of the statute, the only oil spill cases under Oregon law for which attorney fees would be available would be those for which the claims do not exceed $5,500.[9] There is no realistic possibility of such a case, which means that the legislature's inclusion of "attorney fees" as damages in oil spill cases is utterly meaningless. Defendant also attempted to argue that the legislature may have had some future legislation in mind which would then give the present statute some application, but this is equally irrational. Unless I am to assume that the legislature inserted "attorney fees of any kind" as part of its definition of damages for no practical purpose (other than confusion), this statute must be read to include attorney fees expended in the successful pursuit of remedies under the Oregon Oil Spillage Act.

### CONCLUSION

Plaintiffs' motion (# 98) for leave to file a second amended complaint is granted in part and denied in part. Plaintiffs shall file their second amended complaint, consistent with the terms of this order, within 10 days of the date of this order. Defendants' motions (# 63, # 68) are denied. Defendant Morgado's motion (# 90) is granted. Defendants' motion (# 91) for reconsideration is granted. Upon reconsideration, plaintiffs' general maritime claim is dismissed. Defendants' motions (# 94, # 96) are denied.

---

8. Attorney expenses of $158,597.90, minus the unrecoverable $10,876.32, plus the Clausens' personal expenses to attend trial of $1,448.47.

9. Chapter 20 of the Oregon Revised Statutes generally provides for recovery of attorney fees. Under defendant's reading of the damages definition in the Oregon Oil Spillage Act, attorney fees would be available only under ORS 20.080, which provides for fees in property injury claims where the amount pleaded is less than $5,500.